**Christinia M. GEORGE, Respondent,**

v.

**Candace McLUCKIE, Appellant.**

**No. WD 67478.**

Missouri Court of Appeals,
Western District.

June 12, 2007.

---

Allan B. Turner, Chillicothe, for Appellant.

Christinia M. George, Trenton, Respondent, pro se.

Before VICTOR C. HOWARD, C.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

ROBERT G. ULRICH, Judge.

Candace McLuckie appeals the judgment granting an order of protection to Christinia M. George against Ms. McLuckie. On appeal, Ms. McLuckie argues that the judgment is not supported by substantial evidence. Specifically, she maintains

insufficient evidence was presented to prove that she sent the text messages at issue or that these text messages caused Ms. George alarm. The judgment is reversed, and the cause is remanded to the trial court with instructions to vacate the full order of protection.

## Facts

Christinia M. George filed an adult abuse/stalking petition for an order of protection against Candace McLuckie in the Livingston County Circuit Court. Ms. McLuckie is engaged to be married to Ms. George's ex-husband. Ms. George and her ex-husband have one son from their marriage; Ms. George has subsequently remarried and has a son with her current husband. In her fill-in-the-blank petition, Ms. George stated:

An act of abuse or stalking occurred in Chillicothe in the County of Livingston. [Ms. McLuckie] and I: have no relationship other than [Ms. McLuckie] has stalked me.

[Ms. McLuckie] is stalking me.

[Ms. McLuckie] has knowingly and intentionally: harassed me.

I am afraid of [Ms. McLuckie], and there is an immediate and present danger of abuse or stalking of me because: I feel that Ms. McLuckie is mentally unstable and I don't know what she will do to me. I also fear for my son's life with her.

Ms. McLuckie denied the allegations made by Ms. George, and a hearing was held on August 30, 2006. After hearing the testimony of both parties, the court entered a Full Order of Protection. Ms. McLuckie's appeal followed.

## Standard of Review

■ "The judgment of the trial court must be affirmed unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or the trial court erroneously declares or applies the law." *Overstreet v. Kixmiller,* 120 S.W.3d 257, 258 (Mo.App. E.D.2003)(citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). "Substantial evidence is competent evidence from which the trier of fact could reasonably decide the case." *Wallace v. Van Pelt,* 969 S.W.2d 380, 382 (Mo.App. W.D.1998).

■ Reviewing authority defers to the trial court's determinations of credibility. *Schwalm v. Schwalm,* 217 S.W.3d 335, 336 (Mo.App. E.D.2007). It considers the facts and inferences supporting the judgment. *Id.* "Because the trial judge is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act, the discretion of the trial court should not often be superseded." *Wallace,* 969 S.W.2d at 383.

■ "In amending the adult abuse act to include stalking, the legislature intended to prevent potential violence, and the unnecessary and unjustified infliction of emotional distress." *Girard v. Girard,* 54 S.W.3d 203, 205 (Mo.App. W.D.2001).

The potential for abuse of the stalking provision of the Adult Abuse Act is great. And, the harm that can result is both real and significant, not the least of which will be the stigma that attaches by virtue of a person having been found to be a stalker. Moreover, such a finding could lead to criminal prosecution for violation of the criminal stalking statute, § 565.225. Thus, it is incumbent that the trial court to exercise great vigilance to prevent abuse of the stalking provisions in the Adult Abuse Act and in making sure that sufficient credible evidence exists to support all elements of the statute before entering a protective order.

*Id.* at 205–06 (citation omitted).

## Analysis

■ In her sole point on appeal, Ms. McLuckie claims the trial court erred in

entering the order of protection. She contends that Ms. George failed to prove by a preponderance of the evidence that the text messages relied upon by the trial court were made by her. Ms. McLuckie further argues that no evidence was presented that these text messages caused fear of physical harm to Ms. George as required by section 455.010(10)(c).

Ms. George requested an order of protection against Ms. McLuckie, citing several incidents. She testified that Ms. McLuckie had driven by her place of employment and "flipped her off" on a couple of occasions, had called her at work and not left a message on one occasion, and had sent her several text messages. The text messages were sent from two different phone numbers. The majority of the evidence presented at trial pertained to the text messages. Six messages originated from one phone number, and two messages originated from a second phone number. The two messages originating from the second phone number were:

> Does your husband know maybe he should
>
> Stay off Turner [1] hctib ohcysp [2]

Turner is the name of the street on which Ms. McLuckie lives. Ms. George drove down Turner Street and by Ms. McLuckie's house when she took her son to daycare. Ms. George testified that going down Turner Street was the most convenient route for her to take. In granting the Order of Protection, the trial judge stated:

> Having reviewed this matter, and it's very difficult, we have one person saying absolutely something's happened and another person is saying absolutely something has not happened, the Court

has to look at the requirement of the statute and that is whether or not the Respondent has engaged in a purposeful or knowing course of conduct that involves more than one incident that caused the Petitioner alarm or distress that serves no legitimate purpose. The Court, in looking at this, is looking at two incidents only and those incidents are the incidents of the text messages that came from phone number [second phone number] and that Petitioner testified that she was present when her son called that number and the Respondent answered that number. Regardless of whose number that was, that is the number for which she was seeing two text messages. Those messages were "Stay off Turner Street psycho bitch (spelled backwards)" and "does your husband know maybe he should". Both of these can be related to the Respondent in that the Petitioner was on Turner Street before the text message was issued and this is coming from a person from whom there's been testimony that she is seeing the Petitioner's ex-husband. It meets the criteria of more than one time. I think that from the Petitioner's testimony there is no question but what these texts do not serve a legitimate purpose and caused her distress. Therefore, the Court is going to grant the order of protection. That order will be for 365 days. The Petitioner has not requested anything other than no communication and no text messaging and so that is what this Court's order will be. No communication and no text messaging. Ms. George, I will tell you that you are requesting no communication from Ms. McLuckie and I would presume there

---

**1.** The street name "Turner" is presumably nonexistent and is substituted in this opinion for the actual street name.

**2.** "hctib ohcysp" is "psycho bitch" spelled backwards.

would be no communication the other way also.

Thus, the trial court granted the order of protection based on the two text messages set forth above.

 The Adult Abuse Act is located in section 455.005 through section 455.090.[3] Section 455.020.1 states: "Any adult ... who has been the victim of stalking, may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging such abuse or stalking by the respondent." Section 455.010(10) [4] defines stalking:

(10) **"Stalking"** is when an adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:

(a) **"Course of conduct"** means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact;

(b) **"Repeated"** means two or more incidents evidencing a continuity of purpose; and

(c) **"Alarm"** means to cause fear of danger of physical harm.

Section 455.040.1 [5] states in relevant part: "At the hearing, if the petitioner has proved the allegation of abuse or stalking by a preponderance of the evidence, the court shall issue a full order of protection for a period of time the court deems appropriate...." "Preponderance of the evidence is defined as that degree of evidence that is of greater weight or more convinc-

ing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows the fact to be proved to be more probable than not." *State Bd. of Nursing v. Berry,* 32 S.W.3d 638, 642 (Mo. App. W.D.2000)(internal quotation marks and citation omitted).

Ms. George asserted that an order of protection was necessary because Ms. McLuckie was stalking her. The trial court issued the order of protection for that reason. On appeal, Ms. McLuckie argues that Ms. George failed to present substantial evidence that Ms. McLuckie sent the text messages. She also argues that Ms. George failed to present substantial evidence that the messages caused Ms. George "alarm" as defined in section 455.010(10)(c).

Assuming substantial evidence was presented that Ms. McLuckie sent the text messages, which is not determined, insufficient evidence was presented that they or any of the "harassing" events described by Ms. George caused "alarm." Section 455.010(10) requires that conduct cause "alarm" to another person in order for the conduct to constitute stalking. Alarm "means to cause fear of danger of physical harm." § 455.010(10)(c). Review of the record reveals that Ms. McLuckie's conduct was annoying and stressful to Ms. George. No evidence was presented that it caused a fear of physical harm. The following excerpts from the transcript comprise all the evidence presented pertaining to why Ms. George desired the order of protection or the effect of Ms. McLuckie's conduct on Ms. George.

[Trial Judge]: Can you tell the Court why you filed this?

---

3. All statutory citations are to RSMo 2000 unless otherwise stated.

4. RSMo Cum.Supp.2004.

5. RSMo Cum.Supp.2001.

[Ms. George]: I filed this because I would just like for her to stop sending me harassing text messages and driving by my place of employment and flipping me off. I feel she's harassing me and I've not done anything to deserve this.

. . . .

[Ms. George]: . . . Every time they get into a fight, I receive one of these harassing text messages. Just like the one I received on August 14 saying "cunt". When I called my ex-husband and asked if they were fighting again, yeah, the day before . . . .

. . . .

[Ms. George]: On Thursday, December 15th, I received a phone call from 660 646 9603 which is a pay phone and it was her voice. I do recognize her voice on the phone and it said "I love fucking your husband. Irritated?" I did say fuck you bitch and I hung up. That was a very mean phone call.

. . . .

[Trial Judge]: Well, let me back up just a minute. As a result of that, did you do anything?

[Ms. George]: The comment that I made was "fuck you bitch" and hung up. I called Lori Ryan and asked her about it and she recommended that I . . . .

[Ms. McLuckie's Counsel]: Objection, hearsay.

[Trial Judge]: So you contacted the victims advocate as a result of that is that correct?

[Ms. George]: Yes your honor.

[Trial Judge]: And did you make a police report?

[Ms. George]: No I didn't.

[Trial Judge]: Did you do anything else?

[Ms. George]: No. Well, at that time I didn't.

. . . .

[Trial Judge]: Were some of these text messages of a vulgar nature?

[Ms. George]: In my opinion they are.

[Trial Judge]: And you just want it to stop.

[Ms. George]: Yes, your honor. I have moved on with my life. I am happily married and have a new baby. I don't need to be put in the middle of their fights and everything else. When they get into a disagreement don't send me text messages, don't call me, I don't need it. It's stressful. I don't need to be a part of that. I just want it to stop. Just leave me alone and I'll leave her alone.

. . . .

[Trial Judge]: And, therefore, as a result of this, you're requesting that she not communicate with you?

[Ms. George]: Yes, your honor.

[Trial Judge]: And that would include text message?

[Ms. George]: Text messaging, phone calls, don't call me and hang up, don't drive by and flip me off, leave me alone.

. . . .

[Ms. McLuckie's Counsel]: And if you had your drothers, you would rather not have Candace have any contact with your son, would that be correct?

[Ms. George]: If she's gonna harass him like she does me, yes.

[Ms. McLuckie's Counsel]: So it would be easier if Candace wasn't in the picture, is that correct?

[Ms. George]: When it comes to bothering me, yes.

[Ms. McLuckie's Counsel]: How about your son?

[Ms. George]: As long as they get along, I don't care.

. . . .

[Trial Judge]: Anything else you want to tell the Court?

[Ms. George]: I just would like to say I don't want Ms. McLuckie to bother me. If she wants to deny the fact that's who I feel sent those and let me go on with my life without her bothering me and —(inaudible)— battle something that's not part of this because it doesn't include her and I. My ex-husband and her can do whatever they want as long as it doesn't bother my son nor me.

. . . .

[Ms. McLuckie's Counsel]: Judge, I move that the petition be dismissed for several reasons. One is that she provided no proof that any of these calls were originated by Candace McLuckie. She didn't provide proof. Second, I think under the statute, there has to be a showing that even if she could show that it was stalking, that it would have to cause alarm and I think the statute says that alarm means fear of physical harm and there has been no evidence of that other than, even if you believe her story, two women disagreeing over something. She's never been placed in any apprehension of physical harm. There is nothing in here that says that. As a result, she has not met the burden of proof with regard to what's defined as stalking.

[Trial Judge]: Any response?

[Ms. George]: I have provided my proof of what she's done to me.

No evidence was presented that Ms. George feared danger of physical harm. All the evidence indicated that Ms. McLuckie's conduct was stressful, irritating, and unpleasant.

In granting the order, the trial court stated: "I think that from the Petitioner's testimony there is no question but what these texts do not serve a legitimate purpose and caused her distress." The legis-

lature revised the definition of stalking in 2004. Prior to the revision, section 455.010(10) stated:

"Stalking" is when an adult purposely and repeatedly harasses or follows with the intent of harassing another adult. As used in this subdivision, "harasses" means to engage in a course of conduct directed at a specific adult that serves no legitimate purpose, that would cause a reasonable adult to suffer substantial emotional distress. As used in this subdivision, "course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct".

The trial court utilized language from this prior definition when it found Ms. McLuckie's conduct caused Ms. George distress. No evidence of "alarm" as statutorily defined in section 455.010(10)(c) was presented. In her petition, Ms. George stated the following:

I am afraid of [Ms. McLuckie], and there is an immediate and present danger of abuse or stalking of me because: I feel that Ms. McLuckie is mentally unstable and I don't know what she will do to me. I also fear for my son's life with her.

She did not testify to this at trial, however. All of her testimony indicated she was irritated and inconvenienced by Ms. McLuckie's conduct. No evidence of mental instability was presented. Ms. George testified that as long as Ms. McLuckie and her son "get along," she did not care what relationship they had. Moreover, the phrase "I am afraid of [Ms. McLuckie], and there is an immediate and present danger of abuse or stalking of me because:" was preprinted and Ms. George supplied the words after the colon. Ms.

George failed to present substantial evidence demonstrating by a preponderance of the evidence that Ms. McLuckie's conduct caused her fear of danger of physical harm and, thus, constituted stalking. *See, e.g., Schwalm,* 217 S.W.3d at 337 ("While the statutory definition of stalking requires alarm, a plaintiff is required to do more than simply assert a bare answer of 'yes' when asked if he was alarmed. A plaintiff must show that a defendant's conduct caused him fear of danger of physical harm as stated in the statutory definition of alarm.").

The point is granted. The judgment is reversed, and the cause is remanded to the trial court with instructions to vacate the full order of protection.

All concur.