

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| E.M.B., | ) | No. ED101701 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Nancy M. Watkins |
| A.L., | ) | |
| | ) | Filed: |
| Appellant. | ) | May 19, 2015 |

A.L. appeals from the judgment of the trial court granting a full order of protection in favor of E.M.B. A.L. argues the trial court erred in granting a full order of protection under Section 455.040 because E.M.B. failed to prove by a preponderance of evidence that A.L.'s actions constituted "stalking" under Section 455.010(13). We reverse.[1]

In the light most favorable to the judgment, the following evidence was adduced at trial: A.L. and E.M.B. were co-workers at a Domino's Pizza in Kirkwood ("Domino's"). The two were never in a relationship together and never resided together. While they worked together, E.M.B. filed a complaint against A.L. with the management. E.M.B. accused A.L. of sexually harassing her. This complaint resulted in A.L. being terminated from his employment at Domino's.

---

[1] We note E.M.B. did not file a respondent's brief.

After he was terminated, A.L. began sending E.M.B. a series of text messages, which E.M.B. introduced in an exhibit at trial. A.L. admitted at trial that he sent the messages. The text messages, which were all sent on January 14 and 15, 2014, stated as follows:

Thanks for getting me fired!!! They are going to do a drug test on you hope you pass.

Pot stays in your system for 60 days. Hope you pass.

Told them you also deal pot.

Pee test here you come.

Guess I might call UPS & tell them to drug test mike since he is a pot head. Hope he has a job.

Drug test.

Some studies say pot stays in your system for 90 days.

So what are your chances on passing a drug test, (A) 100% (B) 50% (C) 0%

Answer, C

Guess its time for you to b looking for a new job since you can't pass your drug test. Wow I already have a full time job.

Want me to call your mom and tell her you might need some money to pay your car payment because you failed your drug test? (314)984-8152

Have you practice peeing in a cup.

Have fun at work. Should b good money since they are short a driver. Maybe I'll order since its 50% off. Will be late like.

E.M.B. testified she had never given A.L. her parents' phone number, which appears in one of the text messages, so he had gone through the trouble to find that number and send it to her in the text message.

Sometime after those messages were sent in January and before May, there was an incident when A.L. placed an order for pizza at 1:53 a.m. Upon discovering who had placed the

2

order, E.M.B. stated "Well, there's no way I'm going to take it," even though she was the delivery person on duty. Someone else delivered it, and when he got there, A.L. asked "Where's [E.M.B.]?" E.M.B. was scared by A.L.'s question and decided if anything else happened, she would involve the police.

Subsequently, on May 15, 2014, E.M.B. returned from a delivery and A.L. was standing in the path from her car to the door and was videotaping her. She asked him why he was doing that, but A.L. did not answer and just stared at her. E.M.B. got inside Domino's and was scared. When she got inside, she told her manager A.L. was out there taking pictures of her. Her manager took her in the back and called the area supervisor and then the police. E.M.B. called the police because she was scared of A.L. because he was standing out there.

The police came, but said there was nothing they could do because there was no law against taking pictures. After this encounter, A.L. also sent a couple of text messages to E.M.B.'s managers at Domino's on May 15 and 16, 2014, which E.M.B. introduced at trial. These messages stated "Tell [E.M.B.] I will be contacting corporate dominos & main office tomorrow for her calling the police on me," and "I was up at Panda getting some Chinese food and saw [E.M.B.]. I took a picture of her and she called the police. I will b contacting main office & corporate."

Thereafter, E.M.B. filed a petition for an order of protection against A.L. in which she alleged "[A.L.] is stalking [her] at work and has sent [her [her] parent's information via text on 1/14/2014, making claims to get [her] fired because [A.L.] is mad he got fired." E.M.B. also alleged A.L. was "standing outside [her] job and videotaping [her] coming and going" and A.L. "videotaped [her] car and inside [her] place of employment, mad because he got fired."

3

At trial, E.M.B. testified she believed the last text from January 15, 2014, in which A.L. stated he might order a pizza late at night, was a part of a threat that he tried to carry out when he ordered the pizza at 1:53 a.m. and then asked where she was.

The trial court granted E.M.B. a full order of protection against A.L. until May 28, 2015. The trial court noted E.M.B. "has proven allegations of domestic violence or stalking against [A.L.], and [A.L.] cannot show his actions alleged to constitute such stalking were justified under the law and, therefore, the Court orders and finds the following: the relationship to [E.M.B.] is one of stalking." This appeal follows.

In his sole point, A.L. argues the trial court erred in granting a full order of protection in favor of E.M.B. under Section 455.040 because E.M.B. failed to prove by a preponderance of evidence that A.L.'s actions constituted "stalking" under Section 455.010(13). We agree.

In an appeal from a court-tried civil case, our review is governed by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976). E.A.B. v. C.G.W., 415 S.W.3d 795, 798 (Mo. App. E.D. 2013). Accordingly, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. We view the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment. Id. Because of the potential stigma that may attach to an individual who is labeled a "stalker" under the Missouri Adult Abuse Act, trial courts must exercise great care to ensure sufficient evidence exists to support all elements of the statute before entering a full order of protection. Id.

Section 455.010(13) defines "stalking" as:

when any person purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct. As used in this subdivision:

(a) "Alarm" means to cause fear of danger of physical harm;

(b) "Course of conduct" means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact; and

(c) "Repeated" means two or more incidents evidencing a continuity of purpose.

A.L. contends there is insufficient evidence as a matter of law to support a finding that A.L. engaged in a course of conduct without legitimate purpose that caused E.M.B. fear of physical harm. A.L., in particular, contends there was no evidence E.M.B. feared physical harm.

Here, A.L. was fired due to an incident involving the sexual harassment of E.M.B. He then sent her numerous text messages, which demonstrated he was upset with her, but he never threatened to exact any kind of retribution through physical harm. A.L. did order a pizza at 1:53 a.m. and apparently he expected E.M.B. to be the delivery person at that time. However, there is no evidence that A.L. threatened any kind of physical harm to E.M.B. Under these circumstances, we find a reasonable person would not be alarmed or reasonably fear A.L. was going to physically harm her. Then later, A.L. videotaped E.M.B. at Domino's as she returned from a delivery. When she attempted to engage him, he did not respond, but just kept videotaping. We find this conduct, along with the previous interactions is insufficient to prove A.L. purposely and repeatedly engaged in an unwanted course of conduct that reasonably caused alarm to E.M.B.

We note A.L. relies on several cases where courts have found insufficient evidence of "stalking." In one of those cases, M.D.L. v. S.C.E., 391 S.W.3d 525, 527 (Mo. App. E.D. 2013), the accused would come home drunk and would pick fights with victim. When the victim would lock herself in the bedroom with her child, the accused would pound on the door. Id. The accused also told the victim he drugged her, and the victim tested positive for cocaine. Id.

Subsequently, the parties began exchanging their son at a police station, and on several occasions the accused would follow the victim and would drive erratically. Id. On one occasion, the victim called 911 and returned to the police station. Id. Lastly, the accused slashed the tires of the victim's boyfriend when it was parked in the victim's driveway. Id. In that case, we found there was insufficient evidence to support a finding that Appellant's conduct caused Respondent to fear physical harm. Id. at 530.

Further, in Binggeli v. Hammond, 300 S.W.3d 621, 622 (Mo. App. W.D. 2010), the accused called the victim's employer repeatedly in an attempt to get her fired from her job and drove by the victim's house on a few occasions. The two also ran into each other at a few public parking lots. Id. Also, on a few occasions, the victim initiated communications with the accused through text messages, which prompted the accused to have her attorney send the victim a cease and desist letter. Id. at 623. The victim then sought and was granted an order of protection. Id. Subsequently, the court reversed the trial court's judgment entering a full order of protection because the victim failed to adduce evidence that the accused caused her fear of danger of physical harm, and therefore, the victim failed to establish all of the elements necessary to prove stalking as contemplated by Missouri's Adult Abuse Act. Id. at 625.

Also, in George v. McLuckie, 227 S.W.3d 503, 506 (Mo. App. W.D. 2007), the victim complained the accused had driven by her place of employment and "flipped her off" on a couple of occasions, had called her at work and not left a message on one occasion, and had sent her several text messages. One of the text messages stated "Stay off Turner Street psycho bitch (spelled backwards)," and the other stated "does your husband know maybe he should." Id. The court found the trial court had erred in entering the order of protection because the victim failed to present substantial evidence demonstrating by a preponderance of the evidence that the

6

conduct of the accused caused her fear of danger of physical harm and, thus, constituted stalking. Id. at 510.

Here, A.L. did not threaten any physical harm in the text messages. While he did attempt to summon E.M.B. to his house in the middle of the night by getting her to deliver a pizza to him at 1:53 a.m., there is no evidence he did anything to cause E.M.B. to fear physical harm. Also, in the videotaping incident, A.L. did not do anything to cause E.M.B. to fear physical harm. Thus, we find it was not reasonable for E.M.B. to fear she was in danger of physical harm based upon A.L.'s pattern of behavior. While this behavior is certainly unwanted and inappropriate, it does not amount to stalking, which is at issue here.

Therefore, we find the trial court erred in granting a full order of protection in favor of E.M.B. Point granted.

The judgment of the trial court is reversed.

ROBERT G. DOWD, JR., Judge

Kurt S. Odenwald, P.J. and
Gary M. Gaertner, Jr., J., concur.

7