

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| M.S., | ) | No. ED102861 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Nancy N. Watkins |
| N.M., | ) | |
| | ) | |
| Appellant. | ) | FILED: April 5, 2016 |

Appellant N.M. appeals from the trial court's granting, following a hearing, of

Respondent M.S.'s request for a Judgment of the Full Order of Protection against N.M., pursuant

to the Adult Abuse Act, Sections 455.010-455.090, RSMo (Cum. Supp. 2013)[1]. We reverse.

### I. BACKGROUND

N.M. and M.S. have known each other since 2012, when N.M. worked as a coach in an

amateur baseball league run by M.S. On March 13, 2015, M.S. filed a Petition for Order of

Protection, checking the pre-printed box alleging N.M. was "Stalking" M.S. The trial court

issued an Ex Parte Order of Protection against N.M.

A hearing was held on April 2, 2015, at which four witnesses testified. M.S. presented

testimony regarding two separate events in which he alleged N.M. engaged in unwanted conduct

---

[1] The Adult Abuse Act was revised effective August 28, 2015; however, the prior version was still in effect at the time of the events in the matter at hand.

that caused him alarm.  First, M.S. testified that in the summer of 2012, while N.M. was still coaching for a team in M.S.'s league, M.S., along with the league's commissioner and chief umpire, met with N.M. to discuss his coaching style, which had resulted in several ejections from games.  M.S. testified that the conversation turned into N.M. "screaming" and "hollering" at them.

M.S. then testified that N.M. was allowed to stay in the league and coach the team until the end of the 2012 season, after which he was dismissed.  M.S. said he had no contact with N.M. after the summer of 2012 until the second incident, a phone call made by N.M. on March 3, 2015.  N.M. called M.S. at his office, and M.S. alleges N.M. threatened to cut M.S.'s head off, break his knees, put his boot down M.S.'s throat and knock his dentures out.  N.M. was upset about the way M.S. was running his league.  M.S. testified that after the call, he was very upset and decided to call the Clayton Police.  He said he took N.M.'s threats very seriously and "swore to God he would kill me."

At the hearing, N.M. testified that his conversation with M.S. in the summer of 2012 was heated but he does not remember making any threats to M.S.  N.M. admitted that he called M.S. on March 3, 2015, and claimed they again had a "heated" discussion about their baseball leagues.  N.M. admitted he made "references to cartoon violence, such as putting one's foot up one's rear."

S.G., a coworker of M.S., testified that he was there on March 3, 2015, and saw M.S.'s reaction after the phone call.  He said M.S. looked "pretty shaken" after the call, and that M.S. called the police a few minutes after hanging up with N.M.

After all evidence was presented, the trial court found N.M. had engaged in "Stalking" as defined by Section 455.010(13), RSMo (Cum. Supp. 2013), and entered a Judgment of the Full Order of Protection against N.M..  This appeal follows.

2

## II. DISCUSSION

N.M. raises three points on appeal, all alleging the trial court erred in entering a Judgment of the Full Order of Protection against N.M. because M.S. failed to prove the necessary elements required for a finding of stalking. N.M. claims there was insufficient evidence to show that his actions were part of an unwanted course of conduct, which did not have a legitimate purpose, and that M.S. was in fear of physical harm.

Standard of Review

On appeal from a court-tried case, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. E.M.B. v. A.L., 462 S.W.3d 450, 452 (Mo. App. E.D. 2015) (citing Murphy v. Carron, 536 S.W.3d 30 (Mo. banc 1976)). We view all evidence and permissible inferences drawn therefrom in the light most favorable to the judgment. E.M.B., 462 S.W.3d at 452. "Because of the potential stigma that may attach to an individual who is labeled a 'stalker' under the Missouri Adult Abuse Act, trial courts must exercise great care to ensure sufficient evidence exists to support all elements of the statute before entering a full order of protection." Id.

Analysis

Section 455.010(13) defines "stalking" as when "any person purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." "Alarm" is defined as causing fear of danger of physical harm." Section 455.010(13)(a). "Course of conduct" is defined as "a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the

3

other person or unwanted communication or unwanted contact." Section 455.010(13)(b).

"Repeated" is defined as two or more incidents "evidencing a continuity of purpose." Section

455.010(13)(c).

N.M. alleges the trial court erred in finding that his behavior toward M.S. amounted to

stalking, arguing insufficient evidence was presented to show his behavior met the elements of

stalking. We agree. First, M.S. failed to present sufficient evidence of the statutorily required

repeated course of conduct. Again, repeated is defined for statutory purposes as "two or more

incidents evidencing a continuity of purpose." Section 455.010(13)(c). Here, M.S. claims that

an argument in the summer of 2012 and a phone call in March of 2015 are the two incidents

which make up the course of conduct that served no legitimate purpose and caused him to feel

alarmed.

However, these two incidents, separated by almost three years, lack the necessary

connection and qualities to try and show a repeated, unwanted course of conduct by N.M. which

made M.S. feel alarmed. First, the incident in the summer of 2012 was initiated by M.S.. He,

along with the commissioner and chief umpire of his amateur baseball league, approached N.M.

about adjusting his behavior while coaching. The discussion turned into an argument both sides

describe as "heated," with M.S. alleging that N.M. began screaming and hollering at the other

men.

Fowler v. Minehart contains discussion of a similar situation. 412 S.W.3d 917, 922 (Mo.

App. S.D. 2013). In Fowler, the court found that because a "heated conversation" was initiated

by Fowler, the petitioner for the protective order, "the conversation could not qualify as an

'unwanted communication' or 'unwanted contact.'" 412 S.W.3d at 922. Thus, even if the

conversation between N.M. and M.S. turned "heated," it does not qualify as part of an "unwanted course of conduct" because M.S. initiated the conversation with N.M..

Further, no evidence exists that N.M.'s behavior during the incident in the summer of 2012 caused M.S. to feel alarmed. M.S. did not testify that the argument caused him to be alarmed, and in fact N.M. was allowed to remain a coach in the baseball league for the remainder of the summer. "'Proof of alarm involves both a subjective and an objective component.'" E.A.B. v. C.G.W., 415 S.W.3d 795, 799 (Mo. App. E.D. 2013) (quoting Skovira v. Talley, 369 S.W.3d 780, 785 (Mo. App. S.D. 2012)). Thus, M.S. "had to prove that: (1) [N.M.]'s conduct caused him to subjectively fear physical harm; and (2) a reasonable person under the same circumstances would have feared physical harm." Id.

No evidence was presented that M.S. did fear physical harm following the summer of 2012 argument, nor that a reasonable person would have feared physical harm after the argument. N.M. was allowed to remain as a coach in the league run by M.S., and there were no further issues between the two during that summer prior to N.M. being dismissed at the end of the season. Thus, M.S. failed to meet his burden of showing the summer of 2012 incident was unwanted and failed to show that he was alarmed and feared physical harm afterwards.

The next event M.S. attempts to use to establish and unwanted course of conduct is the March 3, 2015 phone call made by N.M. to M.S. M.S. alleges N.M. made several threats toward him, and N.M. admits that he made "references to cartoon violence, such as putting one's foot up one's rear." M.S., however, took N.M.'s threats very seriously and "swore to God he would kill me." M.S.'s coworker, S.G., testified that M.S. looked "pretty shaken" after the phone call, and that M.S. quickly called the police afterwards.

5

There is certainly sufficient evidence to show that M.S. felt the requisite level of alarm from N.M.'s unwanted conduct. N.M. initiated the contact between the two, and his screaming of physical threats at M.S. caused M.S. to fear he was in danger of physical harm, as evidenced by his quickly calling the police after the phone conversation with N.M.. However, another requirement of the stalking statute is that the unwanted course of conduct be engaged in "repeatedly" by the accused party. Section 455.010(13). The statute defines repeated as consisting of two or more incidents "evidencing a continuity of purpose." We find M.S. has failed to show that the two incidents he cites show a continuity of purpose on N.M.'s part.

Again, after the summer of 2012 incident, M.S. did not testify that he was scared or felt threatened in any way by N.M. N.M. was allowed to coach in M.S.'s baseball league for the remainder of the season. They then went their separate ways, having no contact for almost three years. This lack of any contact whatsoever, much less "repeated" contact amounting to "an unwanted course of conduct," leads us to find M.S. has failed to meet his evidentiary burden in showing he was being stalked by N.M.. "[A] single event causing alarm 'is insufficient to prove stalking because of the absence of repeated acts over a period of time.'" E.A.B., 415 S.W.3d at 799, quoting Dennis v. Henley, 314 S.W.3d 786, 791 (Mo. App. S.D. 2010). M.S. has failed to show repeated acts by N.M. which made him fear for his physical safety.

We find the trial court's decision to enter a Judgment for the Full Order of Protection against N.M. was not supported by the evidence, in that M.S. failed to show a repeated, unwanted course of conduct that alarmed him and made him fear physical harm. N.M.'s first and third points on appeal are granted. As we are granting N.M.'s first and third points, we decline to reach his second point on appeal regarding the trial court's decision to refuse evidence of M.S.'s business activities in an attempt to show N.M.'s conduct had a legitimate purpose.

6

## III. CONCLUSION

The judgment of the trial court is reversed and we remand the cause with instruction to the trial court to vacate the Full Order of Protection and deny M.S.'s petition.

_____
ROY L. RICHTER, Judge

Robert G. Dowd, Jr., P.J., concurs.
Mary K. Hoff, J., concurs.