KURT S. ODENWALD, Judge Introduction B.A.G. appeals thé judgment of the trial court, entering a full order of protection against her under Missouri’s Adult Abuse Act, Sections JSfrOOS-jkogO.[1] B.A.G. argues that the trial court erred in entering a full order of protection because there was insufficient evidence to show K.L.M. was alarmed by B.A.G.’s actions. Because B.A.G.’s actions would not cause a reasonable person to fear physical harm, we hold that there was insufficient evidence to support the order of protection entered against B.A.G. Thus, we reverse the trial court’s judgment. Factual and Procedural History . K.L.M. sought an order of protection against B.A.G. for stalking, pursuant to Missouri’s Adult Abuse .Act, Sections 455,005-455,090. The trial court held a hearing on August 24, 2016. During the hearing, the following evidence was adduced: B.A.G. used to date K.L.M.’s boyfriend (“Boyfriend”). B.A.G. and Boyfriend worked at the same police division, where' B.A.G. was subordinate to Boyfriend. B.A.G. later attended a federal police academy, and worked for both the Department of Veterans Affairs Police Department and the Navy. B.A.G. filed an employment-related-harassment lawsuit against Boyfriend. On April 1, 2016, K.L.M. received an anonymous seventeen-page letter in an .unmarked envelope. The author of the letter said that he/she was KX.M.’s friend and watched K.L.M. The létter also talked about Boyfriend, declaring, “[h]e just treats women horribly,” and “he was mistreating one of his officers working with him recently.... [S]he had to go to make a complaint when he started treating her wrong after she turned him down when he ... tried getting with her again.” Further, the letter. mentioned K.L.M.’s father by name, declaring “[djon’t you want someone who will treat you the way he expects you to be treated?” The letter was typed, single spaced, and delivered to K.L.M. as well as to some of her friends and family. K.L.M. received the letter shortly after B.A.G. filed her lawsuit against Boyfriend. Approximately one week after K.L.M, received the seventeen-page letter, she received by mail a birthday card and a two-page letter, in an envelope marked with B.A.G.’s name. Referencing the seventeen-page letter, and written in the same style, the two-page letter exclaimed, “I have unresolved issues of my own,” and “[wje will walk this journey together. I look forward to many more years of your friendship.” The two-page letter attempted to persuade K.L.M. to leave Boyfriend. KX.M. admitted during cross-examination that B.A.G. did not threaten any physical, bodily harm toward K.L.M. Instead, the two letters made KX.M. feel “uncomfortable.” During the third week of April, KX.M received a phone call at her work from someone who identified herself as B.A.G. and asked to speak with K.L.M. K.L.M. put the phone call on hold and then called Boyfriend. No further details to the conversation were presented, K.L.M. later testified that, prior to the hearing, she had not heard B.A,G.’s voice. K.L.M. testified that her Facebook profile was hacked on May 25, 2016. K.L.M. ihaintained that someone with B.A.G.’s name used KX.M.’s Facebook profile picture as a new profile picture associated with B.A.G.’s account. KX.M. asserted the following: B.A.G. accessed KX.M.’s Face-book page, “saved” K.L.M.’s profile picture onto B.A.G.’s own Facebook profile page, made KX.M.’s profile picture B.A.G.’s profile picture, then “shared” the picture. K.L.M. was notified of this incident because the picture was, “shared” to Boyfriend, who forwarded the notification to K.L.M. K.L.M. further alleged that B.A.G. sent this picture to people at a police department. KX.M. did not independently verify the incident as she never looked at B.A.G.’s Facebook page directly. At the end of the hearing, the’trial court entered its judgment of the full order of protection against B.A.G., which expired on February 24, 2017. B.A.G. now appeals. Point on Appeal B.A.G.’s sole point on appeal contends that there was insufficient evidence presented to support a finding that B.A.G. purposely and repeatedly engaged in an unwanted course of conduct, which caused K.L.M. to fear physical harm. Standard of Review Appeals from a court-tried civil case are governed' by Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976); N.M. v. Martin, 508 S.W.3d 171, 173 (Mo. App. W.D. 2016). We affirm the trial court’s judgment “unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.” 536 S.W.2d at 32. We view “the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment.” Bateman v. Platte Cty., 363 S.W.3d 39, 43 (Mo. banc 2012). However, we must keep in mind that “[b]ecause of the potential stigma that may attach to an individual who is labeled a ‘stalker’ under the Missouri Adult Abuse Act, trial , courts must exercise great care ... to ensure'sufficient evidence exists to support all elements of the statute , before entering a full order of protection.” M.L.G. v. R.W., 406 S.W.3d 115, 117 (Mo. App. E.D. 2013). Discussion I. The Mootness Doctrine We first note that the trial court’s judgment denotes that the full order of protection expired on February 24, 2017. Hence, the full order of protection in question ' expired during the pendency of B.A.G.’s appeal. During oral argument, B.A.G. requested leave to supplement the record with the order from the trial court renewing the order of protection. We denied the motion to supplement the record because the renewal record is unnecessary for our determination.[2] “Whether'a case is moot is a legal question that the appellate court raises sua sponte on appeal.” C.I.A. v. T.E„ 423 S.W.3d 844, 845,(Mo. App. W.D. 2014). “Generally, an appellate court does not decide moot issues.” Id. “When a full order of protection has expired, any appeal of that order is moot, because there is no practical effect in vacating an order that has expired.” Hail v. Hail, 380 S.W.3d 655, 656 (Mo. App. W.D. 2012) (internal quotation omitted). However, .we may consider an expired full order of protection “if it raises a recurring issue of general public interest and importance and would otherwise evade appellate review.” Id. (internal quotation omitted); Section 455.007 (Supp. 2014). “Notwithstanding any other provision of law to the contrary, the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has expired.” Section 455.007 (Supp. 2014).[3] The Western District recently addressed the issue of mootness in relation to an expired order of protection and held “[a]s there is no other provision of law to the contrary, we ‘shall’ apply the public interest exception to the mootness doctrine [in Section 455.007] to the trial court’s judgment granting a full order of protection.” C.D.R. v. Wideman, 520 S.W.3d 839, 842 (Mo. App. W.D. 2017). We agree, and will evaluate the substantive merits of B.A.G.’s appeal. II. The Record Contains Insufficient Evidence that B.A.G.’s Conduct Would Alarm a Reasonable Person Under the Same Circumstances. Section 455.010(14) (Supp. 2015) defines “stalking” as: when any person purposely engages in an unwanted course of conduct that causes alarm to another person, ... when it is reasonable in that person’s situation to have been alarmed by the conduct. As used in this subdivision: (a) “Alarm” means to cause fear of danger of physical harm; and (b) “Course of conduct” means a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact. Section 455.010(14) (Supp. 2015) (emphasis added). Alarm contains both a subjective and objective component. See M.S. v. N.M., 485 S.W.3d 792, 795 (Mo. App. E.D. 2016) (quoting E.A.B. v. C.G.W., 415 S.W.3d 795, 799 (Mo. App. E.D. 2013)). The record must contain sufficient evidence showing both that B.A.G.’s conduct caused K.L.M. to subjectively fear physical harm, and that a reasonable person under the same circumstances would have feared physical harm. Id. Considering only the evidence presented in the record, we find insufficient evidence to show that a reasonable person in K.L.M.’s situation would fear a danger of physical harm from B.A.G.’s actions. Because there exists insufficient evidence to satisfy the objective component of the stalking statute, we need not address the subjective component of alarm. See id. at 795-96. In reviewing an appeal, we are limited to the evidence in the record presented. See Rule 81.12.[4] Here, the record does not contain the exhibits introduced at trial.[5] Viewing the evidence before us in the light most favorable to the judgment, the following incidents occurred: (1) B.A.G. sent a seventeen-page letter to K.'L.M. and some of her friends, stating that B.A.G. watched K.L.M., suggested to K.L.M. that Boyfriend was not a good person, and referred to KL.M.’s father by name; (2) B.A.G. sent K.L.M. a birthday card with a two-page letter stating that she would like to be friends, declaring that B.A.G. has some “unresolved issues,” referring to the first letter, and again emphasizing that Boyfriend was not a good person; (3) B.A.G. called K.L.M.’s work and identified herself as B.A.G., but did not continue the conversation further; and (4) B.A.G. set up a Facebook account using her name and K.L.M.’s picture as the profile picture, hacking into K-L.M.’s account to acquire the photo. Noting that the fear of physical harm must be the foundation of K.L.M.’s claim under the Missouri Adult Abuse Act, we are not persuaded that these incidents provide sufficient evidence for a reasonable person to have feared physical harm from B.A.G. Both parties rely on several cases addressing the sufficiency of evidence in civil-stalking situations. In one of those cases, E.M.B. v. A.L., 462 S.W.3d 450 (Mo. App. E.D. 2015), this Court found insufficient evidence of stalking. In E.M.B., the parties were co-workers. 462 S.W.3d at 451. E.M.B. filed a sexual harassment complaint against A.L.,-which caused A.L. to lose his job. Id. After A.L. lost his job, he began texting E.M.B., threatening to report her for drug use in order to get her fired. Id. A.L. attempted to get E.M.B. to deliver a pizza late at night to his residence and A.L. also videotaped E.M.B. Id. at 451-52. This Court found that a reasonable person would not fear physical harm from A,L.’s actions. Id. at 453. To the contrary, in Overstreet v. Kixmiller, 120 S.W.3d 257 (Mo. App. E.D. 2003), this Court found- sufficient’ evidence of stalking. Kixmiller, a chairman of the Osage County Ambulance District Board, told the victim that “she had ‘no one to run to’ because he had both the board and the sheriff in his ‘back pocket.’ ” 120 S.W.3d at 258-60. The victim related several incidents between her and Kixmiller where Kixmiller made verbal threats to her in a loud voice, once walking toward her with “his arms flailing,” and telling her she had “better watch [her] back.” Id. at 260. We held, these actions sufficient to establish stalking. Id. at 261. The matter before us is more comparable to the facts in E.M.B. than Overstreet. Unlike the scenario presented in Over-street, there is simply insufficient evidence to establish the legal requirements for stalking. See generally id. at 258-61. The record contains no evidence of any physical encounters between B.A.G. and K.L.M. Neither B.A.G. nor K.L.M. knew each other personally. The letters sent to K.L.M. contained no physical threats directed against K.L.M. or anyone. See Lawyer v. Fino, 459 S.W.3d 528, 533 (Mo. App. S.D. 2015) (We “will reverse orders of protection based on [Section 455.010(14) (Supp. 2015)] where there was no evidence of overt threats of physical harm and no evidence of physical confrontations.”). And, similar to the videotaping incident in E.M.B., “there [is] no law against taking pictures.” 462 S.W.3d at 452. Thus, just “watching” K.L.M. is not enough evidence to prove stalking. Moreover, the record contains no evidence that K.L.M. ever saw B.A.G. observing her. See id. And while the “hacking” and misuse of a Facebook account is certainly repugnant, and possibly provides- a basis for an action based in tort, such conduct, as described in the record before us, does not suggest any threat or reasonable fear of physical harm that is actionable as stalking. K.L.M. maintains that B.A.G.’s implication that she has connections to law enforcement and intended to use those connections against K.L.M. reasonably created a “heightened alarm.” K.L.M, contends that B.A.G. accessed and dispersed K.L.M.’s information to law enforcement personnel by sending K.L.M.’s profile picture to police officers. Further, K.L.M. attempts to distinguish E.M.B. by stating that the alleged stalker in that case had no involvement with law enforcement, whereas here, B.A.G. has connections to security agencies and training as an enforcement officer. See generally 462 S.W.3d at 451-52. K.L,M.’s argument that she reasonably had a heightened alarm due to B.A.G.’s alleged law enforcement background is unavailing. K.L.M. does not cite, nor have we found any case law to support a finding that a person is entitled to a “heightened alarm” merely because the alleged stalker may have some affiliation with law enforcement. Despite B.A.G.’s alleged affiliation with law enforcement, unlike Overstreet, the record contains no evidence or suggestion that B.A.G. ever threatened to use whatever law enforcement connections she may have had to physically harm, intimidate, or silence K.L.M. See 120 S.W.3d at 258-60. The precise context of the letters sent to K.L.M. and the threats they may or may not contain is not clear from the limited record' before us.’ We do not have the letters to review, only oral testimony from K.L.M. as'to what the letters stated. When viewing the record in the light most favorable to the judgment, we do not find sufficient evidence from which a reasonable person in K.L.M.’s position would have feared physical harm. In total the evidence consists of the two .letters, one phone call, a hacked Facebook account where the profile picture was copied, and B.A.G,’s law enforcement training. Even considering the cumulative effect of such conduct, we are not persuaded that K.L.M, has met the threshold burden required to entitle her to the order of protection entered by the trial court. For these reasons, we find that there is no substantial evidence to support the trial court’s judgment. See Murphy, 536 S.W.2d at 32. Point granted. Conclusion The judgment of the trial court is revised. ’Robert G. Dowd, Jr., P.J., concurs. Sherri B. Sullivan, J., concurs. . All Section references are to RSMo (Cum. Supp. 2013), unless otherwise noted. . Additionally, B.A.G. submitted a motion for attorneys' fees on September 14, 2017. She also submitted a motion to take judicial notice of the renewal hearings on September 26, 2017. We deny both motions. . Enacted in 2011, Section 455.007 stated the following: Notwithstanding any other provision of law to the contrary, the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which; (1) [h]as expired; and (2) [s]ubjects, the person against whom such order is issued to significant collateral consequences by the mere existence of such full order of protection after its expiration. The Missouri General Assembly amended Section 455.007 in 2014, deleting the language in subsection (2). Since that amendment, there have been few published opinions regarding the mootness issue and the altered language. We agree with the Western District's interpretation of the amended Section 455.007 (Supp. 2014) in C.D.R. v. Wideman, 520 S.W.3d 839, 842 (Mo. App. W.D. 2017), . All Rule references are to Mo. Sup. Ct. R. (2016). . The record on appeal must "contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision.” Rule 81.12(a). "It is the duty of the appellant to prepare a legal file and order a transcript such that the record holds all of the evidence needed for the determination of the questions presented to the appellate court.” Eltiste v. Ford Motor Co., 167 S.W.3d 742, 754 n.10 (Mo. App. E.D. 2005) (citing Whitnell v. State, 129 S.W.3d 409, 419 (Mo. App. E.D. 2004)). We recognize that in an appeal arguing sufficiency of the evidence, B.A.G. did not have incentive to include all of the evidence admitted at trial, nor was it explicitly required by Rule 81.12. However, we note that K.L.M. could have supplemented the record with the contents of the letters and the other exhibits admitted at trial; but she did not. See id