In the
 Missouri Court of Appeals
 Western District
G.E.G., )
 )
 Respondent, ) WD83815
 )
v. ) OPINION FILED: April 6, 2021
 )
ROBERT W. GAUERT, )
 )
 Appellant. )

 Appeal from the Circuit Court of Callaway County, Missouri
 The Honorable J. Hasbrouck Jacobs, Judge

 Before Division Three: Karen King Mitchell, Presiding Judge, Gary D. Witt, Judge and
 Anthony Rex Gabbert, Judge

 Robert Gauert ("Gauert") appeals from the judgment of the Circuit Court of

Callaway County entering a full order of protection in favor of G.E.G.1 We reverse and

vacate the judgment.

 1
 Pursuant to section 595.226 RSMo (2016), we refer to the victim, and the victim's employers by their
initials because the circuit court found all three were victims of stalking. In addition to the Petition for an Order of
Protection that G.E.G. filed against Gauert that is at issue in the appeal before us, R.D. and L.D., G.E.G.'s
employers, also filed separate Petitions for Orders of Protection against Gauert, which were granted, and the grant of
relief to R.D. and L.D. have been separately appealed in case numbers WD83816 and WD83817. Further, due to the
interrelated facts, all of these matters were tried together, but the cases were not consolidated. Facts that were
adduced at the trial but are unrelated to G.E.G.'s claims against Gauert are omitted from this opinion so as not to
confuse the issues relevant to this appeal with unrelated issues of the other causes of action.
 Procedural and Factual Background2

 G.E.G. works as a hired hand for R.D. and L.D. on their farm and lives in an

apartment on the farm. R.D.'s and L.D.'s farm adjoins Gauert's farm. There have been

longstanding disputes between R.D. and L.D. and Gauert. On August 14, 2019, G.E.G.

and L.D. were bathing a horse in R.D.'s and L.D.'s pasture approximately twenty-five

yards from the property line to Gauert's property. G.E.G. had her dog with her, which

was off-leash and wandered onto Gauert's property. G.E.G. heard a gunshot from a small

caliber firearm, but she did not think anything of it because it is not unusual to hear

gunshots in the rural area where they live. G.E.G. noticed her dog was missing and

looked through trees that lined the fence-line between Gauert's property and the pasture

and saw her dog lying dead on Gauert's property.

 Immediately, G.E.G. and L.D. went to the property line and telephoned the

Callaway County Sheriff's Department. While waiting for law enforcement to arrive,

Gauert moved the dog's body away from the middle of his yard so it was closer to his

porch and removed the dog's collar. Gauert testified G.E.G.'s dog was being aggressive

towards Gauert's cats, and Gauert retrieved a .22 caliber rifle. Gauert testified that after

he returned with the rifle, G.E.G.'s dog showed his teeth to Gauert, and Gauert shot the

dog for his own protection.

 Gauert offered to let G.E.G. come onto his property and retrieve her dog's body,

but G.E.G. refused because she "wasn't go [sic] onto his property and give him an excuse

 2
 When reviewing a court-tried case, we view the facts and reasonable inferences in a light most favorable
to the judgment. Hanger v. Dawson, 584 S.W.3d 798, 800 (Mo. App. W.D. 2019).

 2
to shoot me." After the Callaway County Sheriff's deputy arrived, the deputy returned

the dog's body to G.E.G. Prior to this incident, G.E.G. and Gauert had not had any

interaction between them of any kind, either positive or negative.

 Several days later, as G.E.G. was leaving the property, she saw another car leaving

Gauert's driveway. Gauert's girlfriend was driving the other car with Gauert in the

passenger seat. After both vehicles turned onto the highway, Gauert's girlfriend moved to

the passing lane and slowed down until her vehicle was parallel to G.E.G.'s vehicle, and

Gauert began taking photographs of G.E.G. through the window of the car.

 Two weeks later on September 3, 2019, G.E.G. filed a petition seeking an order of

protection based on an allegation of stalking. The circuit court conducted a bench trial on

January 23, 2020 and entered its judgment granting G.E.G. a full order of protection

against Gauert ("Judgment") on that date. The Judgment prohibited Gauert from coming

within fifty feet of G.E.G.; communicating with G.E.G. in any fashion; harassing,

stalking, or threatening G.E.G.; and using, attempting to use, or threatening to use

physical force against G.E.G. The Judgment further ordered Gauert not to possess

firearms while the Judgment is in effect. The circuit court also found that it was in the

parties' best interests that the Judgment automatically renew after one year; thus, the

Judgment is effective until January 22, 2022. After various post-trial motions were filed,

heard, and ruled on, the Judgment became final on May 20, 2020. This timely appeal

followed.3

 3
 G.E.G. did not file a brief or participate in this appeal in any fashion.

 3
 Discussion

 Gauert raises two claims of error. First, he asserts that the circuit court erred in

granting the Judgment because the record lacks substantial evidence in that G.E.G. failed

to prove all of the elements required to establish stalking under the Adult Abuse Act

("Act").4 Second, he argues the circuit court erred in ordering that Gauert may not

possess firearms because the circuit court exceeded its jurisdiction in that the Act does

not provide for a remedy of prohibiting the possession of firearms except when the

parties are "intimate partners." Because Gauert's first point on appeal is dispositive, we

do not address his second point.

 Standard of Review

 We review orders of protection under the Act "the same as in any other court-tried

case; we will uphold the trial court's judgment as long as it is supported by substantial

evidence, is not against the weight of the evidence, and does not erroneously declare or

apply the law." M.N.M. v. S.R.B., 499 S.W.3d 383, 384 (Mo. App. E.D. 2016).

"Substantial evidence is evidence that, if believed, has some probative force on each fact

that is necessary to sustain the circuit court's judgment." Ivie v. Smith, 439 S.W.3d 189,

199 (Mo. banc 2014). We defer to the circuit court's credibility determinations and

consider the evidence in the light most favorable to the circuit court's judgment. Id. at

200.

 4
 Section 455.005, et seq. All statutory references are to the Revised Statutes of Missouri 2016 as currently
supplemented, unless otherwise indicated.

 4
 Analysis

 The Act provides that a person who has been subject to domestic violence or has

been the victim of stalking or sexual assault may seek an order of protection. Section

455.020.1. Because it is undisputed that G.E.G. and Gauert are not related and are not

members of the same household as defined by the Act, the Judgment could only be

entered if G.E.G. sufficiently demonstrated she was a victim of stalking by Gauert.

 The Act defines "[s]talking" as "when any person purposely engages in an

unwanted course of conduct that causes alarm to another person . . . when it is reasonable

in that person's situation to have been alarmed by the conduct." Section 455.010(14).

"'Course of conduct'" means a pattern of conduct composed of two or more acts over a

period of time, however short, that serves no legitimate purpose." Section

455.010(14)(b). "'Alarm' means to cause fear of danger of physical harm[.]" Section

455.010(14)(a). Therefore, to obtain relief under the Act a petitioner must demonstrate

by a preponderance of the evidence: (1) that the respondent engaged in a pattern of

conduct of at least two or more acts, (2) which served no legitimate purpose, (3) causing

the petitioner to fear danger of physical harm, and (4) that the petitioner's fear was

reasonable. Binggeli v. Hammond, 300 S.W.3d 621, 624 (Mo. App. W.D. 2010)

(applying section 455.010(10)(a)-(c) RSMo 2000).5

 The facts adduced at trial established only two acts: (1) the shooting of the dog

and (2) the incident on the highway. Because we hold that these two incidents when

 5
 Since Binggeli was decided, section 455.010 has been amended several times, but the definitions of
"stalking," "course of conduct," and "alarm" are substantially the same and are now contained within section
455.010(14)(a)-(c) RSMo. (2016).

 5
considered together would not cause a reasonable person to fear a danger of physical

harm, we address only that portion of Gauert's argument.

 In E.M.B. v. A.L., 462 S.W.3d 450, 451 (Mo. App. E.D. 2015), E.M.B. and A.L.

were coworkers at a restaurant, and E.M.B. filed a complaint against A.L. accusing A.L.

of sexual harassment. A.L. was subsequently terminated, and sent a series of text

messages to E.M.B., which demonstrated A.L. was upset with E.M.B. Id. at 453. A.L.

also ordered food to be delivered from the restaurant and expected E.M.B. to be the

delivery person at that time. Id. Later, A.L. videotaped E.M.B. at the restaurant when

she returned from a delivery, and when E.M.B. confronted him, A.L. did not respond but

kept videotaping. Id. The court held that this conduct along with the previous

interactions was insufficient to cause the requisite reasonable fear to E.M.B. Id.

 In contrast, the Southern District of this Court affirmed a judgment entering a full

order of protection where a stalker had taken photographs of a victim in Skovira v. Talley,

369 S.W.3d 780 (2012). Talley and Skovira were soldiers, who worked together in a

warehouse at Fort Leonard Wood. Id. at 782. Talley made numerous telephone calls and

sent multiple text messages to Skovira inviting Skovira to go on dates with him. Id.

When Skovira refused, Talley would "constantly beg," and eventually a platoon sergeant

counseled Talley to stop calling and texting. Id. Instead, Talley continued to call and

send text messages and began to drive by Skovira's barracks. Id. The platoon sergeant

"issued a negative counseling" for this continued behavior. Id.

 Even after the platoon sergeant issued his order, Talley would talk to Skovira

whenever possible, stare at her, eye her up and down, lick his lips, groan, and make

 6
sexual comments while working with Skovira. Id. The company commander issued a

no-contact order, prohibiting communication with Skovira and requiring that he stay at

least 100 feet away from her. Id. at 783. In violation of this order, Talley took additional

photographs of Skovira, which made her uncomfortable. Id. Talley divorced his wife,

and moved into the barracks right next to Skovira's barracks in violation of the no-contact

order. Id. Because Talley's conduct was escalating and he had repeatedly violated his

orders, the military placed a "watch" on Talley, escorted him wherever he went, took his

car away from him, and ordered him to sleep in a location where he could be watched all

night long. Id. The court noted the continuing, unpredictable, and escalating nature of

Talley's conduct in finding that the conduct did in fact cause Skovira to fear physical

harm and that fear was reasonable. Id. at 786.

 In the instant case, regarding the incident on the highway, G.E.G. testified that she

saw a car leaving Gauert's driveway as she was pulling out of her driveway, and that car

was in front of her. She followed it at a safe distance. After both cars turned onto the

highway the other car moved to the passing lane and slowed down so the passenger side

of that car was next to her car and Gauert, who was in the passenger's seat began taking

pictures of her through the window. As to her fear, G.E.G. testified:

 Again, I was fearing for my life. I knew that something was wrong, that
 people -- normal people do not do that, normal people do not behave like
 that, and obviously something was wrong. I'm only 18 years old. I don't
 have a way to protect myself, and I was making sure that if something
 would have happened to me, that the police would have been notified and,
 yes.

 7
G.E.G. also testified she called the police "[s]o that they could protect me if anything

happened to me in the future."

 Courts examine whether the taking of unwanted photographs reasonably causes a

fear of physical harm on a case by case basis. Just as in E.M.B., there was evidence that

G.E.G. subjectively feared danger of physical harm, however, we find her fear was not

reasonable under the totality of the circumstances. Gauert did not make any threats

towards G.E.G., and the vehicle Gauert was traveling in did not make any threatening

maneuvers or drive erratically on the highway. In fact, Gauert was in the passenger seat,

and G.E.G. testified she was not afraid of the driver, who would have had a better

opportunity to maneuver the vehicle in an intimidating manner. In Skovira, Skovira

reasonably feared danger of physical harm when Talley had taken her photograph after

Talley engaged in a litany of disturbing and unwanted behavior and repeatedly refused to

follow military orders that he stay away from her. G.E.G.'s fear in the instant case is

unreasonable given that she had only one previous encounter with Gauert, which while

extremely upsetting, there was no evidence that it was directed at G.E.G., as she and

Gauert both testified they did not even know each other prior to the incident where her

dog was shot.

 G.E.G.'s fear of physical harm as it relates to a single incident of being

photographed in a public place while driving was not reasonable. We do not find that

Gauert's conduct would cause a reasonable person to fear physical harm, and therefore

G.E.G. has failed to meet her burden of adducing sufficient evidence to support the

Judgment.

 8
 Conclusion

 The Judgment is reversed and vacated in its entirety.6

 __________________________________
 Gary D. Witt, Judge

All concur

 6
 The fact that the law requires reversal in this case should not be read to indicate we condone Gauert's
reprehensible behavior.

 9