E.A.B., Respondent,

v.

C.G.W., Appellant.

No. ED 99737.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 17, 2013.

Steven Waterkotte, St. Louis, MO, for appellant.

Respondent Acting Pro Se, Fenton, MO, for respondent.

ANGELA T. QUIGLESS, Judge.

## I. INTRODUCTION

C.G.W. appeals the judgment of the Circuit Court of Jefferson County entering a full order of protection under Missouri's Adult Abuse Act, sections 455.005–455.090,[1] against him and in favor of his next-door neighbor, E.A.B.[2] C.G.W. argues the trial court erred in entering a full order of protection because E.A.B. failed to prove that C.G.W. engaged in an unwanted course of conduct that served no legitimate purpose and that caused alarm to E.A.B. We reverse and remand.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The record reveals that E.A.B. lives with his wife on property adjoining C.G.W.'s property. The three of them are the only people living on a shared road that provides ingress to and egress from their homes. E.A.B. filed a pro se petition for an order of protection against C.G.W.,

1. All statutory references are to RSMo (Supp. 2011) unless otherwise indicated.

2. E.A.B., the respondent on appeal, did not file a brief. "A respondent is not required to file a brief, but without one, we must adjudicate [the] claim of error without benefit of whatever argument [the respondent] might have presented." *Turner v. Mo. Dep't of Conservation*, 349 S.W.3d 434, 438 n. 1 (Mo.App. S.D.2011) (quotation omitted).

alleging that C.G.W. had stalked him. Among other things, E.A.B. asserted that on one occasion, C.G.W. brought his gun outside, waved it in the air, and pointed it at E.A.B. E.A.B. stated that he was afraid C.G.W. would shoot him. The trial court entered an ex parte order of protection against C.G.W.

Pursuant to section 455.040.1, the trial court conducted a hearing on E.A.B.'s petition. After hearing the evidence, the trial court entered a judgment granting a full order of protection, effective for one year, against C.G.W. and in favor of E.A.B. The order of protection prohibits various acts by C.G.W., including stalking E.A.B. and communicating with him in any manner. C.G.W. appeals.

## III. STANDARD OF REVIEW

In an appeal from a court-tried civil case, our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). Accordingly, this court will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d at 32. "This Court views the evidence and permissible inferences drawn from the evidence in the light most favorable to the judgment." *Bateman v. Platte County*, 363 S.W.3d 39, 43 (Mo. banc 2012). "Because of the potential stigma that may attach to an individual who is labeled a 'stalker' under the Missouri Adult Abuse Act, trial courts must exercise great care ... to ensure sufficient evidence exists to support all elements of the statute before entering a full order of protection." *M.L.G. v. R.W.*, 406 S.W.3d 115, 117 (Mo. App.E.D.2013).

## IV. DISCUSSION

In his sole point on appeal, C.G.W. asserts the trial court erred in entering a full order of protection against him because the evidence was insufficient. More specifically, C.G.W. contends that E.A.B. failed to prove he engaged in an unwanted course of conduct that served no legitimate purpose and that caused alarm to E.A.B. We agree.

Missouri's Adult Abuse Act allows any adult who has been the victim of stalking to seek relief by filing a verified petition alleging such stalking by the respondent. Mo.Rev.Stat. § 455.020.1. The trial court must hold a hearing on the petition. Mo. Rev.Stat. § 455.040.1. At the hearing, the trial court shall issue a full order of protection "if the petitioner has proved the allegation of ... stalking by a preponderance of the evidence." *Id.*

The legislature defined "stalking" as "when any person purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." Mo.Rev.Stat. § 455.010(13). The legislature further defined "stalking" by providing definitions for "alarm," "course of conduct," and "repeated":

(a) **"Alarm"** means to cause fear of danger of physical harm;

(b) **"Course of conduct"** means a pattern of conduct composed of repeated acts over a period of time, however short, that serves no legitimate purpose. Such conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact; and

(c) **"Repeated"** means two or more incidents evidencing a continuity of purpose.

*Id.*

"[A]n act cannot be used to prove the course of conduct required for stalking

unless that act has no legitimate purpose." *Dennis v. Henley*, 314 S.W.3d 786, 791 (Mo.App.S.D.2010). "An activity with a legitimate purpose is one that is lawful or is allowed." *M.D.L. v. S.C.E.*, 391 S.W.3d 525, 529 (Mo.App.E.D.2013).

■ "Proof of alarm involves both a subjective and an objective component." *Skovira v. Talley*, 369 S.W.3d 780, 785 (Mo.App.S.D.2012). Accordingly, E.A.B. had to prove that: (1) C.G.W.'s conduct caused him to subjectively fear physical harm; and (2) a reasonable person under the same circumstances would have feared physical harm. *See id*; Mo.Rev.Stat. § 455.010(13).

■ At trial, E.A.B. presented evidence of several actions by C.G.W. that do not meet the requisite course of conduct for stalking either because the acts had a legitimate purpose or because they did not cause alarm to E.A.B. The evidence established that C.G.W. repeatedly asked E.A.B. and his wife to make a financial contribution toward repairing the shared road. E.A.B. played a voicemail in which C.G.W. complained about potholes in the road and threatened to reveal to authorities his allegation that E.A.B.'s wife acquired her land by deceit if E.A.B. would not "sit down and talk" with him. E.A.B. testified that C.G.W. once yelled at him when both were at a gas station: "when are you going to talk to me, you f-ing [sic] coward?" E.A.B. also testified that C.G.W. stood in the middle of their road with his fists clenched, yelling "a bunch of stuff that [E.A.B.] couldn't understand" and staring at E.A.B. Although C.G.W.'s behavior may have been coarse, his conduct arguably served the legitimate purpose of securing funds for repairs to the shared road. Even assuming *arguendo* that C.G.W.'s conduct had no legitimate purpose, E.A.B. presented no evidence that this conduct placed him in fear of physical harm. Likewise, there is no evidence to support the conclusion that a reasonable person would have feared physical harm from such conduct.

■ E.A.B. testified that C.G.W. followed him to work twice. Given the evidence that E.A.B., his wife, and C.G.W. are the only people living on their shared road, C.G.W. could have been using the road for any number of lawful purposes. E.A.B.'s conclusion that C.G.W. was following him is insufficient to prove the course of conduct necessary for stalking. Moreover, E.A.B. did not testify that C.G.W. following him placed him in fear of physical harm.

■ E.A.B. also played a voicemail from C.G.W. stating: "They are here butchering your tree at the end of the goddamn driveway. I don't know who they are . . . just thought I would let you know." In addition to the fact that the voicemail appears to be C.G.W.'s attempt to warn E.A.B. that someone may have been trimming his tree without permission, E.A.B. offered no evidence indicating that the voicemail caused him to fear physical harm.[3]

■ Finally, E.A.B. testified that C.G.W. pointed a rifle at him on one occasion, but the record, viewed in the light most favorable to the judgment, contains insufficient evidence to support a finding that the act caused E.A.B. to fear physical harm. E.A.B. testified: "I was outside walking my dog, and he has it, just pointed at my house, but I walked out, and he like

**3.** E.A.B. also presented the testimony of John Webb, an employee of Jefferson County who addressed building inspection and solid waste complaints at the parties' homes. However, Mr. Webb's testimony does not support E.A.B.'s stalking allegation because he admitted on cross-examination that he had never seen C.G.W. interact with E.A.B.

stood there for three seconds, pointed it at me, and put it up in the air and waved it around." Though E.A.B. alleged in his petition that he was afraid C.G.W. would shoot him, he never testified about this fear at trial. E.A.B.'s only testimony regarding how the rifle incident affected him was the following statement: "I knew then that there was something wrong. And I-that's kind of worried me." E.A.B.'s testimony that the incident caused him to be "kind of worried," without more, does not satisfy the statutory requirement of a fear of physical harm. We agree that the rifle incident may have caused a reasonable person in E.A.B.'s situation to fear physical harm. However, E.A.B. did not prove that C.G.W.'s conduct subjectively caused him to fear physical harm. *See* Mo.Rev. Stat. § 455.010(13); *M.D.L.*, 391 S.W.3d at 530 (insufficient evidence of stalking in the absence of any testimony that the conduct caused the alleged victim to fear physical harm, despite a "wide range of testimony listing ... untoward conduct"); *George v. McLuckie*, 227 S.W.3d 503, 509 (Mo.App. W.D.2007); *Glover v. Michaud*, 222 S.W.3d 347, 352 (Mo.App.S.D.2007).

 Moreover, even if E.A.B. had proved the necessary element of "alarm" with regard to the rifle incident, he failed to prove that C.G.W. engaged in the requisite "course of conduct." E.A.B. presented evidence that this happened on one occasion. Notwithstanding that testimony, a single event causing alarm "is insufficient to prove stalking because of the absence of repeated acts over a period of time." *Dennis*, 314 S.W.3d at 790.

"[T]he stalking provision of the Adult Abuse Act was not meant to be a panacea for the minor arguments that frequently occur between neighbors." *C.H. v. Wolfe*, 302 S.W.3d 702, 707 (Mo.App.W.D.2009) (quotation omitted). The record reveals an unfriendly relationship between neigh-bors. Nonetheless, E.A.B. bore the burden and failed to prove that C.G.W.'s conduct constituted stalking as defined in the Adult Abuse Act. Even when viewing the record in the light most favorable to the judgment, we do not conclude that the trial court's judgment entering a full order of protection in favor of E.A.B. is supported by substantial evidence. Point one is granted.

## V. CONCLUSION

We reverse the judgment and remand the cause with instructions to the trial court to vacate the full order of protection and deny E.A.B.'s petition.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J. Concur.