

# Missouri Court of Appeals
## Southern District
### Division One

TIFFANI AUSTIN,            )
                                    )
     Petitioner-Respondent,   )
                                    )
vs.                         )      No. SD35663
                                    )
LARRY JARRED,          )      Filed June 20, 2019
                                    )
     Respondent-Appellant.   )

### APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable John C. Spielman

REVERSED AND REMANDED WITH DIRECTIONS

Larry Jarred appeals the trial court's judgement of full order of protection entered against him claiming that the trial court's finding in that judgment that he stalked Tiffani Austin is not supported by substantial evidence. We agree, reverse the judgment, and remand the case to the trial court with directions to enter judgment denying Austin's petition.

### Standard of Review

Review of the grant of a full order of protection under the Adult Abuse Act is under the same standard as any other court-tried case; that is, this Court will uphold the trial court's judgment as long as it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously declare or apply the law.

*Lawyer v. Fino*, 459 S.W.3d 528, 530 (Mo.App. 2015) (internal quotation marks and citations omitted). The facts and inferences are viewed in the light most favorable to the trial court's

1

ruling. *Id.* It is well-settled, nevertheless, that a party is bound by his or her own testimony on matters of fact unless corrected or explained. *Scott v. Hicks*, 567 S.W.3d 266, 269 (Mo.App. 2019). The following factual background is recited in accordance with this standard of review.

## Factual and Procedural Background

Tiffani Austin and Larry Jarred are co-workers at the City of Hornersville. She is the city clerk, and he is the elected city marshal. Each has an office in the Hornersville city hall separated by a door. While the record is not clear, apparently at some point the city's board of alderman suspended and impeached Jarred as city marshal. Jarred appealed that action and thereafter was reinstated as city marshal.

On May 10, 2018, while suspended, Jarred came to Austin's office in the Hornersville city hall and made a Sunshine Law request[1] for a copy of minutes of a board of alderman meeting. The city maintenance man, Harley Harvey, was present. Jarred told Austin that "he was going to sue [her] and bring things against [her] in regards to that matter."

Harley Harvey described an occurrence on some unspecified date and time as follows:

> While sitting in the office at coffee break, I have seen [Jarred] come to the window and ask for things that [Austin] told him she couldn't get him, and he was very persistent, insisting upon her giving these things to him, paperwork of some sort – I don't remember what it was -- to the point of I finally spoke up and said, "You know she can't do that.["] I have no reason to be involved in it other than the fact that it was not going anywhere, it was getting worse.

According to Harvey, Jarred's "mannerism made me believe that he was getting angry" and, while Harvey had no concern about Austin's safety, he "just wanted it to stop." It appeared to Harvey that Jarred "was being too persistent, asking [Austin] for things she couldn't do" and that Harvey "did not want any more confrontation."

---

[1] *See* section 610.026.
All statutory references are to RSMo 2016, unless otherwise indicated.

One unspecified day, apparently after he was reinstated, Jarred came into Austin's office seeking copies of some city ordinances from her. At that time, the city did not provide Jarred with his own independent access to its ordinances, and his only access to city ordinances was to come to Austin's office and request them. In response to Jarred's request to look at some city ordinances, Austin "told him that they weren't allowed to leave the office and that he had to kept [sic] them in there and look at them." Jarred then threatened to arrest Austin, told her "to call [her] attorney because he was going to arrest [her], and to call [the] city attorney[,]" and walked out of the office while grabbing for his phone.[2] Jarred knew he had no authority to arrest someone for an alleged Sunshine Law violation.

There were numerous times that Jarred came to Austin's office requesting to see ordinances or presenting Sunshine Law requests for minutes and ordinances and Austin refused to give them to him. Because Austin and the city withheld the ordinances from Jarred, they were forcing him to come to Austin's office to access them. At some unspecified time, Jarred stopped coming into Austin's office to look at city ordinances because Austin and the city "made copies of the ordinances for him." When asked why she did not do that "months and months ago to avoid him having to come into [her] office[,]" Austin stated that "[i]t wasn't my choice. I don't know." Austin agreed that "at some point somebody decided to give [Jarred] the ordinances so he could do his job[.]"

There were other unspecified times, as many as four or five times a day, when Jarred would come into Austin's office and say to her that "[she] was doing stuff wrong that he could get [her] in trouble for."

---

[2] Jarred denied he ever threatened to arrest Austin. Under our standard of review, however, we must disregard that testimony.

3

One evening around 11:30, after he was reinstated, Jarred stopped to talk to Austin's boyfriend while they were getting gas at a gas station in Hornersville. Austin inserted herself into that conversation. During the conversation, Jarred told Austin "[t]hings about [her] boss and [the city's] board members and how he was being treated wrong, and how he was going to try to have them arrested and sue the city and stuff."

Austin lives on a circle drive in Hornersville. She has observed Jarred, while on patrol as city marshal in his patrol car, driving by her house as many as ten times within a 24-hour period. Jarred has never been on Austin's property or in her residence.

Jarred's job as city marshal is to patrol the streets in the city. As a part of that patrol, he is to drive around and keep an eye on things, look for bad guys, check things out and keep a watch on things. Because Hornersville is "not very big[,]" Jarred's patrol probably will take him around everything in town, including Austin's house and city hall, "quite a number of times."

At some unspecified time, Austin saw a copy of Jarred's log that showed where he had "run" her boyfriend's vehicle tags twice within an unspecified three-day period. The log indicated on both instances that the reason for running the tags was that the vehicle's lights were on. While Austin was not sure whether the lights on her boyfriend's vehicle were on at the time the tags were first run, she was sure they were not on at the time the tags were run the second time.

Also at some unspecified time, Jarred told Austin "that he records all of [their] phone calls and all of the phone calls between him and [her] boss."

Austin is not married to Jarred and never has been. They have no children together. They are not related. They have never lived together. Jarred has never "done anything inappropriate, as far as any kind of advances sexually or anything of that nature" toward Austin.

4

Jarred has never "indicated that he wanted any kind of relationship" with Austin.  The only connection they have is that she is city clerk and he is city marshal.  Jarred has never physically harmed Austin and has not threatened her with physical violence.

Austin filed a petition seeking a full order of protection alleging that she was a victim of stalking by Jarred.  Following a hearing, the trial court entered a judgment of full order of protection finding, among other things, that Austin had "proven allegations of . . . stalking . . . against [Jarred.]"  Jarred timely appealed the trial court's judgment.[3]

**Discussion**

In his first point relied on, Jarred claims that the trial court's finding of stalking is not supported by substantial evidence because there was no evidence presented that he acted in such a manner that it was reasonable for Austin to have feared physical harm.[4]  For the following reasons, we agree.[5]

Section 455.010(14) provides:

"Stalking" is when any person purposely engages in an unwanted course of conduct that causes alarm to another person, or a person who resides together in the same household with the person seeking the order of protection when it is reasonable in that person's situation to have been alarmed by the conduct.  As used in this subdivision:

(a) "Alarm" means to cause fear of danger of physical harm; and

(b) "Course of conduct" means a pattern of conduct composed of two or more acts over a period of time, however short, that serves no legitimate purpose. Such

---

[3] The Judgment of the Full Order of Protection entered by the trial court by its terms expired on February 28, 2019, three months before this case was submitted to the court in this appeal.  Section 455.007 provides, nevertheless, that "Notwithstanding any other provision of law to the contrary, the public interest exception to the mootness doctrine shall apply to an appeal of a full order of protection which has expired."  Applying that doctrine, therefore, we proceed to hear and determine the substantive merits of this appeal. ***K.L.M. v. B.A.G.***, 532 S.W.3d 706, 710 (Mo.App. 2017); ***C.D.R. v. Wideman***, 520 S.W.3d 839, 842 (Mo.App. W.D. 2017).

[4] Jarred presented this claim to the trial court during his closing argument.

[5] Austin did not file a brief on appeal.  There is no penalty for failing to do so.  This failure, however, leaves this court to consider and resolve the merits of Jarred's claims without the benefit of any arguments Austin might have raised. ***Fowler v. Minehart***, 412 S.W.3d 917, 918 n.1 (Mo.App. 2013).

conduct may include, but is not limited to, following the other person or unwanted communication or unwanted contact.

Thus, in order to prove she was entitled to a full order of protection, Austin had to present substantial evidence (1) that Jarred purposely and repeatedly, meaning two or more incidents, (2) engaged in an unwanted course of conduct, (3) that served no legitimate purpose, (4) that caused a fear of danger of physical harm to Austin, and (5) that it was reasonable for Austin to have a fear of physical harm. ***Patterson v. Pilot***, 399 S.W.3d 889, 898 (Mo.App. 2013). Actually having fear of danger of physical harm has been characterized as the subjective component of alarm, as defined by section 455.010(14)(a).[6] ***Id.*** at 899. Whether that fear of physical harm was reasonable under the circumstances has been characterized as the objective component of alarm as so defined. ***Id.*** It is the latter—the objective component of alarm—for which Jarred challenges the evidentiary basis in this appeal.

> To meet these definitions, a plaintiff is required to do more than simply assert a bare answer of 'yes' when asked if he or she was alarmed. Appellate courts will reverse orders of protection based on this definition where there was no evidence of overt threats of physical harm and no evidence of physical confrontations.

***Lawyer v. Fino***, 459 S.W.3d 528, 533 (Mo.App. 2015) (internal quotation marks and citations omitted).

Austin testified, without correction or further explanation, that Jarred has never physically harmed her and has not threatened her with physical violence. There is no evidence in the record of any physical confrontation by Jarred toward Austin. In that context, we turn to the incidences related in the evidence and find only one that even arguably rises to the level of an overt threat of physical harm.

---

[6] Substantial evidence exists in the record that Austin was actually alarmed by some of Jarred's actions mentioned in the evidence.

On one occasion, Jarred threatened to arrest Austin for an alleged Sunshine Law violation, which he knew he had no legal authority to do. In order to establish a course of conduct, however, Austin needed to establish two or more prohibited acts by Jarred. Section 455.010(14)(b). We need not decide, therefore, whether a threat to restrain a person's liberty without legal authority is a threat of physical harm, because even assuming, without deciding, that it was, there is no substantial evidence in the record supporting the existence of a second act by Jarred that could reasonably be considered as a threat of physical harm.

The evidence of Jarred's other acts consisted of threats of litigation; repeatedly making Sunshine Law requests for copies of public documents from the public official designated to receive such requests; being persistent and getting angry when such requests were repeatedly refused; telling Austin, a public employee, that "[she] was doing stuff wrong that he could get [her] in trouble for"; driving by Austin's house ten times within a 24-hour period while on patrol as city marshal in his patrol car; running the plates on Austin's boyfriend's vehicle on two occasions; and recording telephone calls with Austin and her boss. Just as threats of litigation are not reasonably considered to be threats of physical harm, *Lawyer*, 459 S.W.3d at 533, neither are any of the other acts attributed to Jarred.

Moreover, most of these actions had a legitimate purpose. "For conduct to have 'no legitimate purpose,' it must be found to be not sanctioned by law or custom, to be unlawful, or not allowed." *Dennis v. Henley*, 314 S.W.3d 786, 789 (Mo.App. 2010). Requesting copies of city ordinances in order to "do his job," patrolling city streets in his patrol car, and running the plates on vehicles, are all within the legitimate and legal duties and authority of a city marshal.

Because there is no evidence in the record that Jarred engaged in a course of conduct for which it was reasonable for Austin to be alarmed—have a fear of danger of physical harm, *see*

section 455.010(14)(a); *Patterson*, 399 S.W.3d at 898, the trial court's finding of stalking in its judgment of full order of protection is not supported by substantial evidence. Jarred's first point is granted.[7]

## Decision

The trial court's judgment of full order of protection is reversed, and the case is remanded to the trial court with directions to enter judgment denying Austin's petition.

GARY W. LYNCH, J. – OPINION AUTHOR

DON E. BURRELL, P.J. – concurs

NANCY STEFFEN RAHMEYER, J. – concurs

---

[7] In a second point relied on, Jarred also challenges, as not supported by substantial evidence, the trial court's findings in its judgment "triggering 18 U.S.C. §922(g)(8), thereby making it a crime for [Jarred] to possess a firearm[.]" Because our grant of his first point requires reversal of the judgment, any consideration of his second point is moot.

8