IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT

 R.K., )
 )
 Respondent, )
 WD84037
 v. )
 )
 OPINION FILED:
 )
 August 31, 2021
 JOHN M. KELLY, )
 )
 Appellant. )

 Appeal from the Circuit Court of Caldwell County, Missouri
 The Honorable Jason A. Kanoy, Judge

 Before Division Two: Thomas N. Chapman, Presiding Judge, and
 Karen King Mitchell and W. Douglas Thomson, Judges

 John Kelly appeals the entry of a full order of protection against him and in favor of R.K.1

Kelly raises four points on appeal. In his first point, he argues that the trial court erred in entering

the order because R.K.’s petition was unverified. For his remaining points, Kelly argues that the

court erred in entering the order based on a finding of stalking because there was insufficient

evidence of the following elements: subjective alarm (Point II), objective alarm (Point III), and

an unwanted course of conduct (Point IV). Because there was insufficient evidence of an unwanted

 R.K. and her husband share the same last name. To avoid confusion, R.K.’s husband will be referred to as
 1

“Husband.”
course of conduct that caused R.K. alarm, we reverse the judgment and remand the case to the trial

court with instructions to vacate the order of protection and deny R.K.’s petition.

 Background2

 This case involves a long-standing dispute between Kelly and R.K. arising from Kelly’s

habit of letting his dogs defecate on purported public easements on properties owned or controlled

by R.K. and Husband. On August 26, 2020, R.K. filed a petition for an order of protection against

Kelly, claiming that he stalked her and caused, or attempted to cause, her physical harm. The

petition, which bears R.K.’s typed signature, lists incidents occurring on April 22, 25, and 27 and

August 21 and 22 and asserts that R.K. felt “unsafe” and “very threatened” by Kelly. The court

issued an ex parte order of protection and scheduled a hearing on September 9, 2020.

 At the hearing, Kelly and R.K. both appeared pro se. The record is less than clear, but it

appears that R.K. and Husband owned two pieces of property—their residence and a piece of

commercial property. There was evidence that Kelly had a history of allowing his dogs to defecate

on the portion of his neighbors’ property that he believed was subject to public easement. R.K.

testified that, on multiple occasions, Kelly came to her house and lingered in the public easement

just to start trouble and “make [her] life a living hell.” In April of 2020, R.K. recorded by video

an oral confrontation between Kelly and a neighbor over Kelly’s dogs defecating in the neighbor’s

yard. Husband testified that, later in April 2020, he was in the family residence watching television

when he heard Kelly screaming outside, “Come outside, bitch. Who’s going to give me a ticket

now? Where is your cop? I have easement rights.” R.K. asked Kelly to stop coming onto the

portion of her property subject to a public easement and letting his dogs defecate there; Kelly

agreed and, according to R.K., Kelly did not return to R.K.’s residence.

 2
 “We view the facts and reasonable inferences in the light most favorable to the judgment.” L.M.M. v. J.L.G.,
619 S.W.3d 593, 596 (Mo. App. E.D. 2021).

 2
 On August 22, 2020, Kelly came down the road with his dogs and entered the purported

public easement on the commercial property owned by R.K. and Husband. R.K. told Kelly to

leave; he told her to suck his dick and called her a skanky bitch and other derogatory names. R.K.

yelled at Kelly to leave her property. Kelly replied, “make me bitch,” and then got in R.K.’s face

and chest bumped her, knocking her back about two steps. R.K. shoved Kelly, who then left the

property, walking down the street with his dogs.

 R.K. testified,

 All I’m here to do, it has been peaceful since you guys gave us that ex parte, and I
 would like to keep the peace going. I just want us to both leave each other alone,
 stay away from each other, and move on. This has gotten ridiculous. I don’t want
 anybody going to jail, I don’t want anybody in trouble, I just want everybody to
 leave us alone so we can all live in peace. . . . I just want it to stop. It’s—It’s just
 exhausting. I just want it to stop.

 Kelly testified that, on August 21, 2020, he noticed five vehicles shining their headlights

at his house. When he went outside to investigate, Husband chest bumped Kelly and then struck

him in the face twice. Kelly also testified that Husband hit him five times during the August 22

incident. R.K. denied that Husband hit Kelly.

 At the conclusion of the hearing, the court found there was sufficient evidence of stalking

and issued a judgment granting a full order of protection against Kelly and in favor of R.K. Kelly

timely appealed.

 Standard of Review

 “In reviewing the trial court’s grant or denial of full orders of protection [under the

Missouri Adult Abuse Act, we] will sustain the judgment of the trial court unless there is no

evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies

the law.” L.M.M. v. J.L.G., 619 S.W.3d 593, 596 (Mo. App. E.D. 2021). “Because the trial judge

is in the best position to gauge the credibility of the witnesses, in cases under the Adult Abuse Act,

 3
the discretion of the trial court should not often be superseded.” Id. (quoting K.M.C. v. M.W.M.,

518 S.W.3d 273, 276-77 (Mo. App. E.D. 2017)). “Nevertheless, courts must exercise great care

to ensure that sufficient evidence exists to support all elements of the statute before entering a full

order of protection.” Id. The Adult Abuse Act “is not, nor was it intended to be, ‘a solution for

minor arguments between adults.’” L.M.D. v. D.W.D., 540 S.W.3d 472, 475 (Mo. App. W.D.

2018) (quoting Dennis v. Henley, 314 S.W.3d 786, 790 (Mo. App. S.D. 2010)).

 Analysis

 Kelly raises four points on appeal. In his first point, he argues that the court erred in

entering the order of protection because R.K.’s petition was unverified. For his remaining points,

Kelly argues that the court erred in entering the order because there was insufficient evidence of

the following elements of stalking: subjective alarm (Point II), objective alarm (Point III), and an

unwanted course of conduct (Point IV). R.K. did not file a brief.3

 Section 455.020.14 provides, in relevant part, “Any person . . . who has been the victim of

stalking . . . , may seek relief under sections 455.010 to 455.085 by filing a verified petition alleging

such . . . stalking . . . by the respondent.” “Stalking” occurs

 when any person purposely engages in an unwanted course of conduct that causes
 alarm to another person . . . . As used in this subdivision:

 (a) “Alarm” means to cause fear or danger of physical harm; and

 (b) “Course of conduct” means a pattern of conduct composed of two or more acts
 over a period of time, however short, that serves no legitimate purpose. Such
 conduct may include, but is not limited to, following the other person or
 unwanted communication or unwanted contact.

 3
 As the respondent, R.K. was not required to file a brief, but her decision not to do so left us without her
perspective. See, e.g., Taney Cnty. Title & Escrow, LLC v. Jensen, 600 S.W.3d 16, 19 n.1 (Mo. App. S.D. 2020)
(“While there is no requirement that respondents to an appeal file a brief, and no penalty associated with such omission,
we are left to adjudicate the issues presented without the benefit of any argument [respondents] may have asserted.”).
 4
 All statutory references are to the Revised Statutes of Missouri (Cum. Supp. 2019).

 4
§ 455.010(14)(a)-(b). “Alarm has both a subjective and objective component, meaning that a

person must subjectively fear the danger of physical harm and a reasonable person in the situation

would likewise fear the danger of physical harm.” L.M.M., 619 S.W.3d at 596. “The petitioner

has the burden of proof under the statute to establish the allegations by a preponderance of the

evidence.” Id. (citing § 455.040.1).

 I. Kelly waived any claim related to the lack of a verified petition.

 Kelly first argues that R.K. did not file a verified petition, as required by § 455.020.1 and

Rule 55.03(a),5 because her petition bears only her typed signature and no verification certificate

and, thus, she is not entitled to relief under the Adult Abuse Act. We disagree.

 Rule 55.03(a) states, in pertinent part,

 Every pleading . . . shall be signed by at least one attorney of record in the attorney’s
 individual name or by the self-represented party. . . . Every filing made
 electronically must add a certificate verifying that the attorney or party signed the
 original.
 ...
 An unsigned filing or an electronic filing without the required certification shall be
 stricken unless the omission is corrected promptly after being called to the attention
 of the attorney or party filing same.

There is no indication in the record that Kelly called the verification issue to anyone’s attention

before or during the hearing. Instead, it appears that he raised the issue for the first time on appeal.

Thus, by failing to object to the lack of verification earlier, Kelly waived any claim of error

pertaining to that issue. “[I]ssues not presented to the trial court are waived for the purposes of

appellate review.” Jacoby v. Hamptons Cmty. Ass’n, Inc., 602 S.W.3d 869, 873 (Mo. App. E.D.

2020).

 Moreover, it is not clear from the legal file submitted by Kelly whether R.K.’s petition was

electronically filed and, thus, whether the verification requirement was triggered. But assuming it

 5
 All rule references are to the Missouri Supreme Court Rules (2020).

 5
was, the lack of verification does not render the judgment erroneous because “[t]he absence of

verification is effectively cured by the judgment following the hearing.” In re Estate of Basler v.

Delassus, 690 S.W.2d 791, 795 (Mo. banc 1985) (evaluating a claim of error under the probate

code based upon the lack of verification). Because the court entered its judgment granting the

protective order after a hearing on the matter, the absence of a verification certificate on R.K.’s

petition was cured.

 Point I is denied.

 II. There was insufficient evidence of an unwanted course of conduct that caused
 R.K. alarm.

 For his remaining points, Kelly argues that the court erred in entering the order because

there was insufficient evidence of the following elements of stalking: subjective alarm (Point II),

objective alarm (Point III), and an unwanted course of conduct (Point IV).6 As the petitioner, R.K.

bore the burden at trial of proving, by a preponderance of the evidence, that Kelly engaged in an

unwanted course of conduct that caused her to subjectively fear physical harm and that a

reasonable person in the same situation would likewise fear physical harm. Our review of the

record reveals that R.K. failed to meet her burden.

 R.K.’s petition alleges that she felt “unsafe” and “very threatened” by Kelly, but she offered

no testimony that she was afraid of Kelly or feared that he would cause her physical harm. The

evidence was that Kelly had allowed his dogs to defecate on a portion of his neighbors’ property

that purportedly was subject to public easement. Although R.K. testified that Kelly had, on

multiple occasions, come to her house and lingered in the portion of the property purportedly

subject to public easement with his dogs just to start trouble and “make [her] life a living hell,” it

 Kelly’s Points II-IV do not indicate whether he is arguing that the court’s findings lack substantial evidence,
 6

are against the weight of the evidence, or erroneously declare or apply the law. But Kelly’s arguments in support of
those points clarify that he is raising a substantial-evidence challenge to the court’s judgment.

 6
was not until some point in April of 2020, when R.K. recorded a confrontation between Kelly and

another neighbor over the dogs, that things escalated.

 R.K. presented evidence about two subsequent specific events: one in April and the other

in August of 2020.7 In April, Husband testified that he was in the house watching television when

he heard Kelly screaming outside, “Come outside, bitch. Who’s going to give me a ticket now?

Where is your cop? I have easement rights.”8 During this encounter, R.K. asked Kelly to stop

letting his dogs defecate on the purported public easement; Kelly agreed, and there is no evidence

that Kelly returned to R.K.’s home after that. On August 22, Kelly entered upon the purported

public easement area of commercial property owned by R.K. and Husband. R.K. told him to leave;

he told her to suck his dick and called her a skanky bitch. Kelly got in R.K.’s face and chest

bumped her, and she shoved him back.

 Although, in describing Kelly’s conduct during the August incident, R.K. stated that he

was “threatening [her] again,” R.K. otherwise characterized Kelly’s conduct as irritating and

unpleasant. R.K. testified, “All I’m here to do, it has been peaceful since you guys gave us that

ex parte, and I would like to keep the peace going. I just want us to both leave each other alone,

stay away from each other, and move on. This has gotten ridiculous.” Such testimony is

insufficient to prove by a preponderance of the evidence that R.K. subjectively feared physical

harm. See E.A.B. v. C.G.W., 415 S.W.3d 795, 799-800 (Mo. App. E.D. 2013) (finding the

respondent’s testimony he was “kind of worried” by the appellant’s behavior, which included

 7
 There may have been more than one confrontation between R.K. and Kelly in April 2020, but that is unclear
from the record.
 8
 Kelly’s statements reflect a misunderstanding of public easements. An easement is “[a]n interest in land
owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific
limited purpose (such as to cross it for access to a public road).” EASEMENT, Black’s Law Dictionary (11th ed.
2019). A public easement does not grant members of the public the right to use the property that is the subject of the
easement for whatever purpose they see fit. “If the user of an easement exceeds his right, either in manner or extent
of use, he is guilty of trespass and if proven, would allow for a legal remedy of damages.” Smith v. Woodard, 15
S.W.3d 768, 773 (Mo. App. S.D. 2000).

 7
pointing a gun at the respondent, was insufficient to demonstrate subjective fear of physical harm);

M.D.L. v. S.C.E., 391 S.W.3d 525, 530 (Mo. App. E.D. 2013) (finding insufficient evidence of

stalking in the absence of testimony that the appellant’s conduct caused the respondent to fear

physical harm, despite a “wide range of testimony listing . . . untoward conduct.”). And “[i]t is

well-settled . . . that a party is bound by . . . her own testimony on matters of fact unless corrected

or explained.” Austin v. Jarred, 578 S.W.3d 847, 849 (Mo. App. S.D. 2019).

 R.K. described one instance where Kelly made physical contact with her by chest bumping

her. Even if we were to find that this incident caused R.K. alarm, “a single event causing alarm

‘is insufficient to prove stalking because of the absence of repeated acts over a period of time.’”

M.S. v. M.N., 485 S.W.3d 792, 796 (Mo. App. E.D. 2016) (quoting E.A.B., 415 S.W.3d at 799);

see Austin, 578 S.W.3d at 852 (declining to find a course of conduct where “there [wa]s no

substantial evidence in the record supporting the existence of a second act by [the appellant] that

could reasonably be considered as a threat of physical harm”).

 The remainder of the incidents described by R.K. and Husband involved Kelly’s use of

obscene language and hand gestures directed at R.K. But there was no evidence that these

incidents caused R.K. to fear physical harm. See, e.g., Dennis v. Henley, 314 S.W.3d 786, 791

(Mo. App. S.D. 2010) (the appellant’s use of a “rude hand gesture,” while “vulgar and boorish,”

was insufficient to support a finding of subjective alarm); George v. McLuckie, 227 S.W.3d 503,

506-10 (Mo. App. W.D. 2007) (testimony about harassing text messages, driving by appellant’s

place of employment and “flipping [appellant] off” that only caused irritation and inconvenience,

but not fear of danger of physical harm, was insufficient to prove stalking).

 We find dispositive the absence of testimony from R.K. or any other witness that Kelly

engaged in a course of conduct that caused her to fear physical harm. Even when viewed in the

 8
light most favorable to the judgment, the record contains insufficient evidence from which the trial

court could have found such a course of conduct. Thus, R.K. failed to prove the subjective alarm

and course of conduct elements of stalking.

 Because there is no evidence in the record that Kelly engaged in a course of conduct that

caused R.K. alarm—a fear or danger of physical harm—the trial court’s conclusion that Kelly

stalked R.K. is not supported by substantial evidence.

 Points II and IV are granted.9

 Conclusion

 While we are sympathetic to the trial court’s desire to spare R.K. from Kelly’s vulgar

comments and rude behavior, there was insufficient evidence that Kelly engaged in an unwanted

course of conduct that caused R.K. alarm. Accordingly, we reverse the judgment and remand the

case to the trial court with instructions to vacate the full order of protection and deny R.K.’s

petition.

 Karen King Mitchell, Judge

Thomas N. Chapman, Presiding Judge, and W. Douglas Thomson, Judge, concur.

 9
 In view of our disposition of Points II and IV, we need not address Point III—whether there was sufficient
evidence to satisfy the objective alarm element of stalking. See K.L.M. v. B.A.G., 532 S.W.3d 706, 710 (Mo. App.
E.D. 2017) (declining to address the subjective component of alarm where there existed insufficient evidence of the
objective component of the stalking statute).

 9